UNITED STATES of America for Use and Benefit of M. A. BRUDER & SONS, INC., Plaintiff,

v.

AETNA CASUALTY & SURETY CO., Blake Construction Co. and Harry F. Ah, Jr., Defendants.

Civ. A. No. 77-1754.

United States District Court, District of Columbia.

Nov. 9, 1979.

Robert L. Kay, Bethesda, Md., for plaintiff.

Robert N. Jensen, Washington, D. C., for defendants.

## MEMORANDUM ORDER

PENN, District Judge.

The use plaintiff, M. A. Bruder & Sons, Inc. (Bruder), filed this action to recover under a payment bond, for moneys allegedly due it as the result of its contract with William S. Alt & Son (Alt) to supply paint for the new Walter Reed Army Medical Hospital. The prime contractor was Blake Construction Co., Inc. (Blake). The action is filed pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d, and the court has jurisdiction over this proceeding, 40 U.S.C. § 270b(b).

The case came on for a nonjury trial on October 29, 1979. After considering the evidence offered by the parties, together with their legal memoranda, and the arguments of counsel, the Court makes the findings of fact and conclusions of law set forth below.

### I

*Findings of Fact*:

1. The United States contracted with the defendant, Blake for the construction, alteration, or repair of the new Walter Reed Army Medical Hospital (Hospital) which is located in the District of Columbia.[1]

---

1. The suit originally included claims for moneys due for materials furnished for the Hospital project and the Federal Bureau of Investigation building project. See Compl. ¶ 2. The defend-

2. The contract exceeded $2,000 and Blake, as principal, and defendant, Aetna Casualty and Surety Co. (Aetna), as surety, executed a payment bond for the protection of all persons supplying labor and materials in the prosecution of the work provided for in the contract.[2]

3. On or about November 18, 1974, Blake entered into a contract with "Wm. S. Alt & Son, 4080 S. Four Mile Run Drive, Arlington, Virginia," to supply labor and materials to do pavement markings, painting, general and plastic fabric wall covering in and for the Hospital.

4. Sometime in May, 1975, A. Larry Lee (Lee), the manager of the Washington Division of Wm. S. Alt & Son, discussed with Thomas S. Morris (Morris), a Washington metropolitan area sales representative for Bruder, the possibility of having Bruder supply paint to Alt for use in the Hospital project.

5. As a result of that discussion, Bruder sent a letter to Alt, dated May 19, 1975, setting forth the specifications and prices for various paints it could supply for the Hospital project.

6. Prior to that time, Alt had been using paint supplied by Glidden.

7. Lee, on behalf of Alt, accepted those prices and requested Bruder to supply the necessary paint.

8. There was no written contract between Alt and Bruder. The agreement and credit allowed Alt was approved at Bruder's home office in Pennsylvania, based in part on Bruder's prior experience with Alt, and in part, on Alt's rating in Dun & Bradstreet, Inc.

9. Bruder furnished the paint requested by Alt, pursuant to the agreement between Morris and Lee. Occasionally, paint was ordered on behalf of Alt by a "Doc White". White had the authority to place such orders.

10. Alt thereafter requested Bruder to bill Alt for the paint by sending the bills to "Kenneth Sales Corp., c/o Wm. S. Alt & Son, 4080 S. Four Mile Run Drive, Arlington, Virginia". That address is solely the address of Alt and not that of Kenneth Sales Corp. (Kenneth Sales).

11. Bruder billed Alt by sending the bills to Kenneth Sales in care of Alt at the Arlington address. Bruder's representatives considered the bills as being those of Alt, not Kenneth Sales, and assumed that Alt had requested that the billings be made to Kenneth Sales for Alt's internal purposes.

12. Wm. S. Alt & Son was a sole proprietorship operated by Harold F. Alt, Jr.[3] Harold F. Alt, Jr. was also President and principal stockholder of Harold F. Alt & Sons, Inc. and Kenneth Sales, both then located at 3920 N. Kedvale Avenue, Chicago, Illinois.

13. Two checks for paint supplied by Bruder to Alt were received by Bruder. One was on a check written on the account of "Wm. S. Alt & Son, 4080 S. Four Mile Run Drive, Arlington, Virginia", dated October 6, 1976, in the amount of $4,394.47 drawn on the McLaughlin National Bank, Washington, D. C., and signed by A. Larry Lee. The second check was drawn on the account of "Wm. S. Alt & Son, Inc., 3920 Kedvale Avenue, Chicago, Illinois", dated December 9, 1976, in the amount of $5,270.38, that check being drawn on the

ants moved for summary judgment with respect to both projects on the grounds that both claims were barred because Bruder is a third tier subcontractor and thus the claim is barred under the Miller Act, 40 U.S.C. § 270b(a), and that the claim for materials supplied for the use in the construction of the FBI building is barred by the statute of limitations, 40 U.S.C. § 270b(b). The court, Hart, J., granted so much of the motion as related to the FBI building but denied so much of the motion as relates to the Hospital. See Order filed January 4, 1979.

2. See 40 U.S.C. § 270a(a).

3. Wm. S. Alt & Son went out of business in 1977 as did the other companies and corporations owned by Harold F. Alt, namely, Harold F. Alt & Sons, Inc. and Kenneth Sales Corp. Other business ventures of Harold F. Alt, Jr. were Kedvale Corporation, Noralt, Inc. and H. A. S. Inc.

American National Bank and Trust Co. of Chicago, Illinois. This latter check was not paid due to insufficient funds.

14. All materials delivered to Alt pursuant to the agreement between Alt and Bruder, were delivered to the Hospital project job site.

15. Bruder sent written notice to Aetna, by certified mail dated January 14, 1977, return receipt requested, advising Aetna of the unpaid obligations of "Wm. S. Alt Co., 4080 S. Four Mile Run Drive, Arlington, Virginia". The letter noted the headquarters address of Alt as being 3920 N. Kedvale Avenue, Chicago, Illinois, aka Kenneth Sales Corp. Copies of that letter were also sent to Blake and to Aetna's local agent, Sugar & Sugar Co. Aetna, Blake, and Sugar & Sugar Co. received those letters on or before January 19, 1977, well within the ninety day period required under the statute.

16. Alt filed monthly statements with Blake setting forth its expenses and charges and attaching affidavits entitled "Release of Liens and Affidavit for Partial Payment". Those statements were signed by A. Larry Lee as manager for Alt and contained statements listing purported suppliers, subcontractors and materialmen. Kenneth Sales Corp., 3920 N. Kedvale Avenue, Chicago, Illinois, and Wm. S. Alt & Son, 4080 S. Four Mile Run Drive, Arlington, Virginia, were listed as "suppliers, subcontractors and materialmen", while Bruder is not mentioned on the various releases of lien.

17. The amount now due under the contract between Bruder and Alt is $15,883.10.

18. Kenneth Sales was neither a subcontractor nor a sub-subcontractor for paint at the time of the contract between Bruder and Alt.

19. Alt entered into an oral contract with Bruder, Alt received the paint furnished by Bruder, the paint was delivered by Bruder to Alt at the Hospital project job site, payments for the paint were made by Alt as set forth above, and as a result Alt is now liable for any payments not yet received by Bruder.

20. At the time he entered into the negotiations with Moore, A. Larry Lee was acting on behalf of Alt and not on behalf of Kenneth Sales.

21. There is no evidence that A. Larry Lee was an agent or had any authority to act on behalf of Kenneth Sales.

22. Alt and Kenneth Sales were controlled by the same person or persons, primarily Harold F. Alt, Jr.

23. Alt was a subcontractor of Blake, the prime contractor and Alt purchased paints directly from Bruder, pursuant to their oral agreement, for use on the Hospital project.

II

*Conclusions of Law*

Bruder argues that it is entitled to recover the amount due under the Miller Act payment bond since its contract was with Alt, a subcontractor of Blake. It argues that, while it did not have an express or implied contract with Blake, the prime contractor, it did have a direct contractual relationship with the subcontractor, Alt. Blake and Aetna contend, however, that Bruder is no more than a third tier subcontractor, that Blake had entered into a subcontract with Alt, which in turn entered into a subcontract (sub-subcontract) with Kenneth Sales, the latter to supply the necessary paint, and that Kenneth Sales entered into an agreement with Bruder.

 The law is quite clear in this respect. A person who enters into a contract to supply materials to a sub-subcontractor is normally not afforded the protection of the payment bond provided pursuant to the Miller Act. The Act, 40 U.S.C. § 270b(a), provides that:

[A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within

ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, . . . . .

The courts have interpreted the above language to allow a sub-subcontractor to recover on the Miller Act payment bond, provided that it complies with the notice provisions, set out in the Act, but have held that a third tier subcontractor cannot recover. *J. W. Bateson Co., Inc. v. United States ex rel. Board of Trustees of the National Automatic Sprinkler Industry Pension Fund,* 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978); *F. D. Rich Co. v. United States ex rel. Industrial Lumber, Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins, Co.,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). Applying these principles here means that Bruder cannot recover unless it establishes that its contract was with Alt and that it had given the notice required under the statute.

This Court is satisfied that Bruder has met its burden. Morris, the representative of Bruder on this contract, made his agreement with A. Larry Lee, the Washington manager for Alt, who acted on behalf of that company. Bruder quoted Alt the prices for the paint and was advised by Lee that Alt would purchase the necessary paint from Bruder. Bruder actually furnished the paint to Alt at the Hospital project job site. The only reference to Kenneth Sales was a request made on behalf of *Alt* that bills be sent to Kenneth Sales in care of Alt at Alt's Arlington, Virginia office.

The one payment received by Bruder was made by Alt and not Kenneth Sales. Moreover, while it is clear that Lee had authority to act on behalf of Alt, in that his signature appears on the check which was paid by Alt for supplies furnished by Bruder, and on the release of lien filed by Alt with Blake, there is no evidence that he had any authority to act or contract on behalf of Kenneth Sales. Under these facts, the Court is satisfied that Kenneth Sales was not a sub-subcontractor on the Hospital project. At most, it was a mere conduit set up by Alt for some internal billing purpose not now known by the parties. Bruder's contract was with Alt and Alt's with Blake. Under these circumstances, Bruder, having given timely notice to Blake and Aetna, is now entitled to recover under the payment bond.

Defendants cite the Court to the monthly release of liens filed by Alt which names Kenneth Sales as a subcontractor (sub-subcontractor) in support of their argument that Bruder was merely a third tier subcontractor furnishing materials to Kenneth Sales. Again, those documents were apparently used by Alt for internal reasons having nothing to do with Bruder or the arrangement between Bruder and Alt. It is also noteworthy that the release of liens gives the Chicago address for Kenneth Sales and the Arlington, Virginia, address for Alt while, Bruder, when asked to send the bill to Kenneth Sales, was asked to send it in care of Alt at Alt's Arlington address. Under the facts of the case, the fact that Kenneth Sales is listed as a subcontractor or materialman on the release of lien form filed by Alt is entitled to little or no weight.

Finally, the defendants cite *United States ex rel. Powers Regulator Co. v. Hartford Accident and Indemnity Co.,* 376 F.2d 811 (1st Cir. 1967) in support of their request that the court deny Bruder's claim. That case is distinguishable. There, the use plaintiff contended that the subcontractor and the sub-subcontractor were the alter ego of each other so that the use plaintiff, which on paper had contracted with a purported sub-subcontractor, had in reality contracted with a subcontractor, and thus not being a third tier subcontractor, was entitled to recover under the payment bond. The District Court found as a fact that the subcontractor and the sub-subcontractor were separate and distinct entities, *United States ex rel. Powers Regulator Co. v. Farina Construction Corp.,* 261 F.Supp. 278 (D.Mass.1966), and the appellate court merely concluded that that finding was supported by the evidence. 376 F.2d at 812. There is nothing in that case, or the others cited by the defendants, which would dic-

tate a different ruling than that made by the Court in this case.

This Court, finds that Bruder has met its burden of proof and concludes that Bruder entered into a direct contract with Alt, a subcontractor of the prime contractor, Blake. After having supplied paint to Alt pursuant to the contract between two organizations, Bruder did not receive full payment and is presently entitled to recover $15,883.10. Bruder gave a timely notice to Blake and Aetna pursuant to 40 U.S.C. § 270b(a) and Bruder is now entitled to recover under the Miller Act payment bond.

### ORDER

The Clerk shall enter judgment in favor of M. A. Bruder and Sons, Inc. in the amount of $15,883.10 against the defendants Blake Construction Co., Inc. and Aetna Casualty & Surety Co.