0378

Melton STUCKEY, Executor of the Estate of Philip Zeltner, Appellant, v.
UNIVERSITY OF SOUTH CAROLINA, Respondent.

Court of Appeals

*Fredrick A. Gertz* of *Gertz & Moore,* Columbia, *for appellant.*

*Thomas Kemmerlin, Jr.,* of *Sherwood N. Fender & Associates,* Beaufort, *for respondent.*

Heard Nov. 21, 1984.

Decided Jan. 29, 1985.

CURETON, Judge:

This is an action for breach of employment contract. Appellant Melton Stuckey, executor of the estate of Philip Zeltner, contends the circuit court's construction of the contract between Zeltner and the respondent University of South Carolina (USC) was erroneous and therefore summary judgment was improperly granted to USC. We disagree and affirm.

The material facts are not in dispute. Philip Zeltner was employed as an assistant professor of philosophy by USC for the academic year 1974-1975. At that time, the USC Faculty Manual, which constituted a part of Zeltner's employment contract, provided under the section captioned "Tenure Regulations" that the "maximum probationary period for all full-time faculty members with the rank of assistant professor shall be satisfactory service in that rank for six years. . . ."

Paragraph 5 of the Faculty manual further provided:

a. If, during the [first or second] year of the probationary appointment, it is deemed in the best interest of the University to terminate the appointment . . . notice of such termination will be given in writing by [a specified date].

Thereafter, notice in writing of the termination of any appointment . . . will be given at least twelve months prior to the date of termination.

b. If notice of termination is not given in writing at least twelve months prior to the beginning of the year following . . . the sixth year of the maximum probationary period in the case of assistant professors, the appointment . . . shall thereafter be a continuous (or tenure) appointment.

During Zeltner's fifth year of employment (1978-1979), he applied for tenure. Near the end of the fifth year, on April 26, 1979, USC notified Zeltner that he had been denied tenure and was terminated effective May 15, 1980, at the completion of his sixth year of employment.

Zeltner appealed this decision to the South Carolina State Employee Grievance Committee. On February 5, 1980 (during Zeltner's sixth year of employment), the Committee found that USC had failed to meet certain procedural re-

quirements of the Division of State Personnel in effecting Zeltner's termination and it ordered his reinstatement. The Committee expressly refrained from addressing the issue of Zeltner's tenure because it believed it had no authority to do so. USC did not appeal the decision.

On August 22, 1980, during Zeltner's seventh year of employment, USC directed him to prepare a tenure file for consideration. Zeltner refused, claiming he had obtained *de facto* tenure pursuant to Paragraph 5(b) of the Faculty Manual because USC had failed to give him an effective or unassailable notice of termination prior to the beginning of his seventh year of employment.

Based on the tenure file submitted by Zeltner in 1978-1979, USC notified Zeltner on October 15, 1980, that he had been denied tenure. On April 16, 1981, USC also notified Zeltner that he was terminated effective May 15, 1982, following his eighth year of employment. This suit was commenced in June, 1981.

In April, 1982, first Zeltner, then USC moved for summary judgment on the pleadings, exhibits, deposition and Zeltner's admissions. The circuit court, construing Paragraph 5(b) of the Faculty Manual, held that USC's April 29, 1979 notice of termination and denial of tenure met the Manual's requirement that notice be given Zeltner twelve months before the beginning of his seventh year of employment. It therefore granted USC's motion for summary judgment and denied Zeltner's motion for the same. Zeltner appealed.

On April 18, 1984, the pendency of the appeal, Zeltner died testate. This Court granted Zeltner's executor's petition to be substituted as appellant.

Zeltner relies on a single contention on appeal: USC's attempt to terminate him is wrongful inasmuch as he acquired *de facto* tenure pursuant to Paragraph 5(b) because USC's April 1979 notice of termination, which was rendered inoperative by the Grievance Committee's order of reinstatement, was wholly ineffective as "notice of termination" for purposes of complying with Paragraph 5(b), and USC gave no other timely notice.

Both parties acknowledge that the provisions of the Faculty Manual establish the contractual rights and responsibilities between them and that resolution of

this case rests on the interpretation to be given Paragraph 5(b). As with the construction of any contract, resort is first made to the language of the employment contract in issue and if the language is prefectly plain and capable of legal construction, it determines the rights and obligations of the parties. *Gilstrap v. Culpepper,* S. C. 320 S. E. (2d) 445, 447 (1984); *Blakeley v. Rabon,* 266 S. C. 68, 221 S. E. (2d) 767 (1976); *Martin v. Carolina Water Service, Inc.,* 280 S. C. 235, 312 S. E. (2d) 556 (S. C. App. 1984).

Of equal importance, however, is the rule that "the subject matter and purpose of the contract are to be considered in ascertaining the intention of the parties and the meaning of the terms they have used ... [T]he dry words of the contract should, if possible, be so interpreted as to subserve, not subvert, such intention." *Dibble v. Dibble,* 248 S. C. 165, 181, 149 S. E. (2d) 355, 364 (1966).

The clear intention of Paragraph 5 of the Tenure Regulations is that faculty members holding probationary appointments be sufficiently apprised of an impending termination in order to allow them time to take appropriate action for their future employment security. Only if USC is so negligent as to permit the faculty member to serve his or her maximum probationary appointment without timely notice of termination does Paragraph 5(b) provide that the member receives automatic tenure.

Contrary to Zeltner's contention, Paragraph 5(b) contains no requirement that the notice of termination actually effectuate a termination. In fact, the efficacy of the notice of termination is ultimately determined by State regulations governing the termination of State employees. It is the notice of termination, not the accomplishment of it, which must occur at least twelve months before the beginning of the year following the end of the maximum probationary period. *See generally, Sawyer v. Mercer,* 594 S. W. (2d) 696 (Tenn. 1980); *Bruno v. Detroit Institute of Technology,* 51 Mich. App. 593, 215 N. W. (2d) 745 (1974).

Here, "the beginning of the year following [Zeltner's] sixth year of [his] maximum probationary period" was August, 1980.[1] Thus, according to Paragraph 5(b), USC was required

---

[1] According to Paragraph 5(b), "each year of a first semester appointment shall be taken to begin with the commencement of the scheduled fall term."

to give him notice of termination no later than August, 1979. It actually notified Zeltner on April 26, 1979, of his termination. His subsequent reinstatement did not nullify USC's compliance with the notice provision of Paragraph 5(b). Consequently, Zeltner did not acquire *de facto* tenure at the beginning of his seventh year of employment and his subsequent termination was not wrongful on this basis.

For the reasons given herein, the judgment of the circuit court is

Affirmed.

GARDNER and SHAW, JJ., concur.